**Elizabeth L. Jackson, Plaintiff-Appellee, v. Donald R. Whittinghill, Defendant-Appellant.**

Gen. No. 10,416.

Third District.

February 26, 1963.

Dunn & Dunn, of Bloomington (Frank M. Brady, of counsel), for appellant.

Chester Thomson and Loren Thomson, of Bloomington, for appellee.

CARROLL, J.

The plaintiff obtained a judgment below upon a verdict in the amount of $9,000. Defendant's post trial motion was denied and this appeal follows.

The defendant argues that (1) the verdict is grossly excessive and based on "speculative and possible injury" which are not compensable, (2) the trial court committed reversible error in denying defendant's mo-

tion for continuance and additional medical examination, and (3) plaintiff's attorney conducted himself so improperly so as to deprive defendant of a fair and impartial trial.

The plaintiff was injured while operating an automobile on October 1, 1960. Since no question of liability is presented, recitation of the facts pertaining to liability is omitted.

Plaintiff testified that she was 36 years old at the time of the occurrence, was a housewife, and also served as housekeeper for 8 college students who stayed in the plaintiff's home. Upon colliding with defendant's automobile, the plaintiff was knocked about in the car and immediately following the collision became nauseated and felt faint. Upon reaching her home she found that she was unable to use her legs and a doctor was called. She was admitted to a hospital where she remained for 2 days, but her back began to bother her and she did not retain full function in her lower extremity. The attending physician, a general practitioner, referred plaintiff to an orthopod. He testified to his examination and treatment of plaintiff. He prescribed sedatives, took X-rays, and stated that the plaintiff complained of severe pain in her right knee and also complained of back pain. He testified that he felt that an injury to the lumbar spine resulted in pain radiation to the knee. He described the anatomy functionally relating disc injury to symptomatology in the lower extremities. He explained that upon discovering a disc involvement, the plaintiff was referred to the orthopod. He further testified that in April following the occurrence, he assisted the specialist in operating upon the right knee of the plaintiff. The operation involved excision of torn cartilage. The attending doctor did not treat the plaintiff for her back injury, but left that for the specialist. Plaintiff's prior general health was good

317

and X-rays of her spine were negative. The doctor explained that X-rays reflect pathology of the bony structure but are not ordinarily expected to illustrate damage to the nerves or soft tissue. The plaintiff was hospitalized for 8 days on account of the operation on her knee. Upon returning to her home, she was unable to perform her ordinary housekeeping tasks. Prior to the occurrence, in addition to her own housekeeping, she cleaned the rooms of her house guests once a week and did the guests' laundry. Plaintiff testified that prior to the occurrence she was very active in civic and church groups, but has been unable to return because of pain in her back and weakness in her legs. She testified that at the time of the trial she suffered constant pain in her back and legs, and that her daughter and husband were performing the housekeeping chores which she performed prior to the accident. She stated her right knee is weak and causes her pain and discomfort.

The orthopedic, Dr. Gordon Schultz, testified to his qualifications and to his examinations, diagnosis and treatment of the plaintiff. His testimony was not merely that of an expert, but also that of an attending physician. The doctor related plaintiff's history and his clinical examination. He stated that knee and ankle reflexes were exaggerated, but equal, but that he found decreased sensation on the top of plaintiff's foot. The doctor concluded that a nerve involvement was present, separate and apart from the knee injury which probably emanated from spinal pathology. He also found decreased sensation on the outer right calf. X-rays were normal and the doctor initially prescribed physiotherapy treatments. Subsequent examination led the doctor to the conclusion that plaintiff suffered a torn cartilage and the surgery related above was prescribed. Following the surgery the doctor found improvement in the knee condition, but related that

318

the plaintiff continued to complain of the pain in her lower back as well as numbness on the outer side of her leg. This led the doctor to suspect a ruptured disc. The doctor stated that quite often a ruptured disc does not manifest itself for weeks or months following the trauma experienced. The doctor continued to treat the plaintiff conservatively. He re-examined her on February 3, 1961. Upon this examination the plaintiff had the same complaints as previously registered and upon clinical examination the doctor concluded that plaintiff suffered a "mild ruptured disc." The doctor then explained generally the function of the intervertebral disc, effect of trauma, and the resultant symptomatology. He related the symptomatology to the accident of October 31, 1960. He stated he thought the plaintiff had a ruptured disc. He testified that the choice of future treatment was left to the plaintiff. She could either adopt a program of sedatives and limited activities, including wearing a support and sleeping on a hard bed, or she could undergo surgical intervention. The doctor described the course of the surgical alternative. As to functional limitations, he stated that one with the plaintiff's type of injury could not perform any hard labor including such things as lifting a tub of clothes and should forever exclude such activity. Expenses incurred by plaintiff amounted to $1,102.25. Medical and hospital expenses for surgical repair of the disc would be between $1,200 and $1,500.

Dr. Wilbur G. Ball testified in behalf of the defendant. This witness was a general practitioner who examined the plaintiff on behalf of the defendant. He related the history provided by plaintiff and in substance testified to negative findings with respect to the back condition complained of by plaintiff; that is to say, the doctor related no objective findings which substantiate a diagnosis of a ruptured disc. He

319

testified that his examination was a general physical one; that he did not qualify as an orthopedic; and that he did not conduct a neurological examination. He also stated it was impossible for him to determine "whether the leg pain was related to a possible disc or not" and recommended that the defendant obtain an additional examination by an orthopedic specialist.

The complaint was filed January 31, 1961, and the case was at issue in June. The defendant obtained plaintiff's examination by Doctor Ball on September 7, 1961. On September 14, 1961, defendant filed his motion for continuance and also a petition for physical examination, the case having been set for trial on September 18, 1961. The trial court denied both motions.

In the course of his opening statement, plaintiff's attorney referred to Dr. Ball having recommended that the plaintiff be re-examined by a neurosurgeon, "to see whether or not she had this thing that Dr. Schultz had already diagnosed." The defendant's attorney, apparently endeavoring to offset the implication of Dr. Ball's remark (defendant's own witness), attempted to tell the jury that additional examination had been requested by the defendant, but that the court sustained plaintiff's objection to this line of argument. The plaintiff's attorney again referred to Dr. Ball's recommendation that plaintiff be referred to a specialist and in the course of his argument made the following statement: "That is what Dr. Ball said, a very fine surgeon, a very fine gentleman and a very honest gentleman, notwithstanding that he was engaged by Mr. Brady and comes in here to testify about this case." Plaintiff's counsel also alluded to a "trick question" from defense counsel, but voluntarily failed to complete his statement and withdrew the reference.

As to the first error argued as grounds for reversal, it must be noted that no objection is raised as to the instructions given to the jury and we, therefore, take up this question presuming that the jury was properly instructed. We cannot accept defendant's position that plaintiff's injuries are merely "speculative and possible." While some of the symptomatology is of necessity subjective, we feel that medical testimony adduced in behalf of plaintiff is sufficient for the jury's consideration. An injury or its sequela need not be supported to the degree of scientific certainty suggested by defendant. The plaintiff's testimony is not inherently incredible. The pain and disability to which she testified is on its face reasonable and the jury apparently found the plaintiff worthy of belief. The testimony of plaintiff's attending general practitioner and orthopedic lent medical credence to plaintiff's complaints. This supportive scientific testimony was sufficiently certain to warrant consideration by the jury in arriving at their verdict. We deem untenable the argument that the injuries claimed by plaintiff are speculative and not compensable. We find ample evidentiary basis for the implied finding by the jury that the injuries claimed were in fact suffered as a result of the collision. Smith v. Illinois Valley Ice Cream Co., 20 Ill App2d 312, 322, 156 NE2d 361. The defendant relies upon the authority of Jensen v. Elgin, J. & E. R. Co., 15 Ill App2d 559, 147 NE2d 204. In that case, plaintiff's judgment was reversed and the case remanded because the verdict was found excessive. In that case, however, there was a complete failure of proof on the question of causal connection and no positive medical testimony on the question of diagnosis. The case at bar is clearly distinguishable in that the medical proofs here are ample and positive. This plaintiff suffered a knee injury requiring surgical repair, a

321

back injury which caused continuing pain, discomfort and partial disability, medical and hospital expenses of about $1,100. She may expect future pain and disability and may require additional surgery at an expense of $1,200 to $1,500. The jury assessed her damages at $9,000.

The question is whether the amount of the verdict is so grossly excessive that justice requires a different result. We believe the evidence is sufficient to support the verdict and will not disturb it as excessive.

Supreme Court Rule 17–1 provides:

"1. In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court upon notice and for good cause shown on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination, or to produce for such examination the person in custody or under legal control who is to be examined. The court may refuse to order examination by the physician suggested but in that event shall permit the party seeking the examination to suggest others. A party or person shall not be required to travel an unreasonable distance for the examination. The order shall fix the time, place, conditions and scope of the examination and designate the examining physician.

"2. The party requesting the examination shall pay the fee of the examining physician and compensation for any loss of earnings incurred or to be incurred by the party or person to be examined in complying with the order for examination, and shall advance all reasonable expenses incurred or

322

to be incurred by the party or person in complying with the order.

"3. Within twenty days after the completion of the examination, and in no event later than ten days before trial, the examining physician shall prepare duplicate originals of a written report of the examination, setting out his findings, results of all tests made, his diagnoses and conclusions, and deliver or mail an original of his report and of all corrections, supplements, or additions thereto, to the attorney for the party requesting the examination and a duplicate original thereof to the attorney for the party examined or for the party who produced the person who was examined. The court may enforce compliance with this requirement. If the report is not delivered or mailed to the attorney for the party examined, or for the party who produced the person who was examined, within the time herein specified or within any extensions or modifications thereof granted by the court, neither the physician's report nor his testimony or his findings or x-ray film or the results of any tests he has made may be received in evidence except at the instance of the party examined or who produced the person examined."

It is obvious that the provisions of Paragraph 3 would have been violated unless the case were removed from the trial call. The motions for continuance and additional medical examination were made six days before the date set for trial. The defendant had already obtained one medical examination of plaintiff. Apparently defendant's choice of an examiner was a poor one. He used a general practitioner, then decided examination by an orthopedic surgeon was desirable. It is obvious that an orthopedic problem was

involved here. The purpose of Rule 17–1 is not to provide an expert witness for a litigant. Its purpose is one of discovery. The defendant was furnished medical information by plaintiff well in advance of trial and also obtained an examination. The defendant might very well have used a qualified orthopedic. The lack of judgment in this regard should not prejudice plaintiff. The trial court has broad discretion in matters of motions under 17–1 and for continuance. Under the circumstances here presented the court acted well within its discretion in denying both motions.

■ ■ The scope of counsel's comments upon the evidence and upon the witness is a matter within the sound discretion of the trial court. We do not find that the trial court permitted unreasonable latitude in this respect. It appears that plaintiff's counsel effectively made capital of the fact that defendant's medical witness admitted his lack of qualification to make orthopedic diagnosis and recommended to defendant that a neurosurgeon examine plaintiff. Plaintiff produced a specialist who testified in her behalf. We believe that plaintiff's counsel, in arguing his client's case to the jury merely reviewed matters in evidence in the light most favoring his cause. The trial court did not permit counsel to dwell on this point nor to place unreasonable emphasis on it. Certainly this matter was a subject for reasonable comment, and we cannot say that the comment was calculated to prejudice the jury. We find no merit in defendant's contention that he was deprived of a fair trial because of the conduct of plaintiff's counsel.

For the reasons stated, the judgment is affirmed.

Affirmed.

REYNOLDS, P. J. and ROETH, J., concur.