522 P.2d 596 (1974)
Victor H. HILDYARD, Plaintiff-Appellee,
v.
WESTERN FASTENERS, INC., a Colorado corporation, and Harvey Bostrom, Defendants-Appellants.
No. 72-428.
Colorado Court of Appeals, Div. I.
March 19, 1974.
Rehearing Denied April 9, 1974.
*597 Grant, Shafroth, Toll & McHendrie, P. C., John N. Dahle, Donald M. Burkhardt, Denver, for plaintiff-appellee.
Paul D. Renner, C. J. Berardini, R. Jerold Gerome, Denver, for defendants-appellants.
Selected for Official Publication.
*598 RULAND, Judge.
Defendants appeal from a judgment of the trial court entered pursuant to a jury verdict for plaintiff in an action to recover for personal injuries and property damage resulting from an automobile accident. Defendants raise numerous allegations of error, and therefore relevant facts are discussed in this opinion as they relate to the various allegations.

I

Confession of Judgment
Plaintiff filed his complaint on July 1, 1969, seeking damages for personal injuries and property damage in the sum of $31,650, interest and costs. Defendants then filed an answer denying liability. On January 12, 1972, plaintiff filed a motion to amend the complaint in order to claim an increase in damages based upon additional symptoms and injuries, whereupon defendants sought to confess judgment for the amount requested in plaintiff's original complaint. The trial court declined to enter judgment based upon defendants' confession and granted plaintiff leave to file an amended complaint.
Defendants assert that there is no statutory method for confession of judgment in Colorado, and thus pursuant to C.R.S.1963, 135-1-1, the common law applies. Citing Towery v. Buck, 81 Okl. 38, 196 P. 693, as representative of the common law rule, defendants contend that the trial court should have entered judgment based upon the confession. We disagree.
C.R.C.P. 68 sets forth the procedure in Colorado for confession of judgment by authorizing defendants to offer to allow judgment to be taken against them; however, the offer must be accepted by plaintiff. Absent acceptance of the offer, the offer is not binding. See Conner v. Steel, Inc., 28 Colo.App. 1, 470 P.2d 71. Absent acceptance of the offer, the trial court correctly authorized amendment of the complaint upon a showing that the nature and extent of plaintiff's damages were not entirely known at the time the original complaint was filed. See C.R.C.P. 15(a).

II

Denial of Request for Physical Examination
Plaintiff was injured from a rear end collision while seated in his motor vehicle. Plaintiff was first examined by an orthopedic surgeon, and the injury was diagnosed as a cervical spine sprain and degenerative disc problem aggravated by the sprain. Because plaintiff's pain and restriction of ability to use his left arm continued despite conservative treatment, the orthopedic surgeon referred plaintiff to a thoracic surgeon. This physician diagnosed plaintiff's difficulties as a thoracic outlet syndrome. For purposes of simplification, plaintiff's medical difficulties following these examinations may be described as being either a nerve disorder or a blood circulation problem (circulatory disorder).
By informal agreement between counsel, defendants apparently were in the process of arranging examination of plaintiff by another thoracic surgeon. However, prior to finalizing these arrangements, plaintiff was referred to a neurologist. The neurologist examined plaintiff on two occasions. After the first examination, the neurologist felt that plaintiff showed symptoms of both nerve and circulatory disorders. On the follow-up examination, the neurologist concluded that symptoms of the nerve disorder had subsided and that plaintiff's symptoms were best explained as a circulatory disorder.
Thereafter, by agreement of counsel, plaintiff was examined by a neurological surgeon selected by defendants. The neurological surgeon concluded that plaintiff evidenced symptoms attributable both to a nerve and circulatory disorder.
By motion pursuant to C.R.C.P. 35, defendants then requested examination by a thoracic surgeon. As the basis for their request, defendants asserted that it was *599 necessary, in order to prepare for trial, that defendants have examination by physicians in the same specialty as each physician selected by plaintiff. Defendants assert that the trial court's denial of this motion constitutes reversible error. We disagree.
Although C.R.C.P. 35 does not by its terms limit a party to one examination, see 3 V. Dittman, Colorado Practice § 35.2, a motion for physical examination is addressed to the sound discretion of the trial court, and it is necessary to demonstrate good cause therefor. See Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L. Ed.2d 152. We find no Colorado cases setting forth the requirements for a second examination. In other jurisdictions, good cause usually consists of showing that despite the initial physical examination, due to special circumstances, the movant continues to be ignorant as to the nature and extent of the claimant's injuries.[1] However, it does not appear sufficient to allege that the defense requires a physician in the same specialty as each physician who has examined and treated the claimant. See Red Top Cab & Baggage Co. v. Grady, 99 So.2d 871 (Dist.Ct.App.Fla.); Jackson v. Whittinghill, 39 Ill.App.2d 315, 188 N.E.2d 337; Roskovics v. Ashtabula Water Works Co., 174 N.E.2d 295 (C.P.Ohio).
In the present case, all of the physicians agreed that plaintiff suffered a cervical sprain from the accident. Reports from all physicians who examined plaintiff at his request were furnished to defendants, and the physician selected by defendants was allowed to make two separate examinations. Although none of the doctors who examined plaintiff was in complete agreement as to whether the cervical sprain caused a nerve disorder, circulatory disorder, or both, there was no indication that examinations by additional physicians would resolve the uncertainty. Hence, under the circumstances of this case, we are unable to conclude that the trial court abused its discretion in denying the motion for physical examination. See Jackson v. Whittinghill, supra.

III

Directed Verdict on Contributory Negligence
Defendants assert the trial court erred by directing a verdict for plaintiff on the issue of whether plaintiff was guilty of contributory negligence. We agree.
Defendant Bostrom's automobile admittedly collided with plaintiff's automobile from the rear as plaintiff's automobile was stopped at some point near a stoplight controlled intersection on a multi-lane street.
Plaintiff testified that the collision occurred after he came to a complete stop for the stoplight at a point where the front of his vehicle was approximately eight feet from the crosswalk. That point of impact was corroborated by testimony of the investigating officer who relied upon measurements made from debris left on the street as a result of the impact.
Bostrom testified that the collision occurred after plaintiff had stopped abruptly one to one and a half car lengths from the crosswalk as the stoplight turned yellow. Bostrom contradicted the police officer's testimony both as to the amount and location of debris on the street following the collision.
Under this conflicting evidence, a factual issue was presented as to whether plaintiff was contributorily negligent by virtue of a sudden and abrupt stopping of his vehicle in an unexpected location. See *600 Gaulin v. Templin, 162 Colo. 55, 424 P.2d 377. Accordingly, the trial court erred in directing a verdict on the issue of plaintiff's contributory negligence.
The fact that Bostrom made inconsistent statements in a prior deposition on other facets of the case is not relevant in determining the propriety of the directed verdict. On a motion for a directed verdict, the evidence must be considered in a light most favorable to the party against whom the motion for directed verdict is requested. See Reidesel v. Blank, 158 Colo. 340, 407 P.2d 30; Randall v. Nasbarg, 28 Colo.App. 147, 470 P.2d 893.

IV

Mitigation of Damages
Since this case must be retried, we discuss certain other allegations of error raised by defendants. As an affirmative defense, defendants alleged that plaintiff's refusal to undergo surgery constituted a failure to mitigate damages. At the conclusion of evidence, plaintiff moved and the trial court granted a motion to strike this affirmative defense; defendants contend this ruling constituted reversible error. We disagree.
Plaintiff is an otologist who, prior to the accident, spent a considerable proportion of his time performing various intricate surgical operations on the ear. Following the accident, plaintiff experienced numbness and tingling in the fingers of his left hand when conducting any surgical procedures that required more than 40 minutes. He therefore drastically reduced the number of such operations.
A thoracic surgeon diagnosed plaintiff's injury as a circulatory disorder and suggested that it could be corrected by a surgical procedure which he testified resulted in improvement in 85 to 90% of the cases and total relief in 10%. On this basis defendants argue that the trial court should have instructed the jury regarding plaintiff's duty to mitigate his damage. See Intermill v. Heumesser, 154 Colo. 496, 391 P.2d 684. However, the same surgeon also testified as to the hazards of the operation and that such hazards must be weighed against plaintiff's position as a highly skilled surgeon. Further, he did not rule out the possibility that plaintiff's symptoms might be the result of a nerve disorder which would be unaffected by the surgery he proposed. Finally, an orthopedic surgeon testified that he felt plaintiff's difficulty was primarily caused by a nerve disorder, and other physicians testified that it could be caused by either or both conditions.
Under this state of the record, we agree with the trial court that there was insufficient evidence of failure to mitigate damages to warrant submission of this issue to the jury. Plaintiff's obligation to seek a cure for his injuries does not require him to submit to surgery which involves substantial hazards or which offers only a possibility of cure. See Jones v. Eppler, 266 P.2d 451 (Okl.); see also Annot., 48 A.L.R.2d 348.

V

Evidence Related to Plaintiff's Damages
The record reflects that due to the injuries received, plaintiff is limited as to the type of surgical procedures he now can perform. In support of his claim for impairment of earning capacity, plaintiff offered an exhibit showing the number of certain types of operations he performed over approximately an eleven year period from 1960 through and including 1970. This eleven year period consisted of approximately nine and one-half years of practice prior to the accident and one and one-half years following. The average number of each surgery performed per year was reflected for 1962 through and including 1970. In closing argument, plaintiff utilized the exhibit to project future loss of income by way of calculations exhibited to the jury on the premise that plaintiff could have performed these surgical *601 procedures for an additional ten years but for the injuries received.
Defendants assert that the trial court erred: (1) In admitting the subject exhibit in evidence and allowing plaintiff to utilize the above method in closing argument on the issue of damages; and (2) in not allowing defendants to show by plaintiff's income tax returns that his adjusted gross income has actually increased since the accident due to utilization of tax sheltering devices, apparently involving a grapefruit farm. As a result of the foregoing, defendants contend that the jury verdict of $315,000 is excessive, or in the alternative, that the evidence was insufficient to sustain the jury's verdict.
In support of their contentions, defendants first assert that plaintiff's closing argument amounted to presentation of speculative evidence to the jury. We conclude the exhibit and method of argument was proper.
Plaintiff testified that he intended to practice at least another ten to twelve years and that his health was good except for the injuries received in the accident. Impairment of earning capacity is generally determined by comparing what an injured party was capable of earning before the accident with what he is capable of earning thereafter. 22 Am.Jur.2d Damages § 94; 25 C.J.S. Damages § 87. In the present case, projecting this loss based on comparisons between the number of surgeries actually performed before the accident and calculations of lost income incurred when the surgeries could no longer be performed after the accident was one method of measuring plaintiff's impaired earning capacity. Such calculations are not evidence. We do not assume that the jury is unable to distinguish between argument and evidence. See Newbury v. Vogel, 151 Colo. 520, 379 P.2d 811.
Defendants assert in effect that if the method of argument utilized by plaintiff was proper, then it was error for the trial court to exclude plaintiff's tax returns offered by defendants to show that plaintiff's utilization of a tax shelter allowed him to realize approximately the same net income regardless of the gross income from his practice. We disagree.
Under the circumstances of this case, the measure of plaintiff's loss is the impairment of his earning capacity by reason of the injuries received, see Moyer v. Merrick, 155 Colo. 73, 392 P.2d 653, and utilization of tax planning through other investments has no bearing on plaintiff's ability to continue with the performance of surgery which requires special training and personal skills.

VI

Jury Instructions
We discuss here defendants' objections to instructions which may be given in a new trial of this case. Defendants object to an instruction given by the trial court relative to the respondeat superior liability of Western Fasteners, Inc., for the acts of its employee, Bostrom. The basis of the objection was that an instruction on this issue was duplicitous because the same proposition was covered in the jury verdict form. Under the circumstances of this case, there was no error in the giving of this instruction.
Defendants object to an instruction given by the trial court which advised the jury that in assessing actual damages, they could consider, inter alia, the loss of enjoyment of life. It is not error for this element to be included in an instruction where evidence of such has, as here, been introduced during trial. Rodriquez v. Denver & Rio Grande Western R. R. Co., Colo.App., 512 P.2d 652.
Defendants object to an instruction which advised the jury relative to apportionment of damages in the event that it found the accident to have aggravated a preexisting physical ailment of plaintiff. The basis for the objection was two-fold: (1) There was no evidence offered apportioning the degree of aggravation; and (2) the instruction, though taken from the *602 Colorado Jury Instructions 6:8, did not accurately reflect the law as stated in Newbury v. Vogel, supra. In lieu of the given instruction, defendants had tendered a separate instruction covering the same subject matter which the trial court refused.
In the case at hand, one of the medical witnesses testified that the collision in question aggravated a preexisting condition (narrowing of the disc space between the 5th and 6th vertebrae in the neck). However, the record reflects that prior to the accident, plaintiff experienced none of the difficulties of which he now complains. In light of this evidence, the instruction was proper, see Intermill v. Heumesser, supra, and we do not find any material conflict between the instruction given and Newbury v. Vogel, supra.
Defendants tendered and objected to the trial court's refusal to give an instruction which advised the jury that after arriving at their verdict, they should not add any sum of money for federal income taxes because the verdict is not income to the plaintiff within the meaning of the federal tax laws. The trial court properly refused this instruction. Davis v. Fortino & Jackson Chevrolet Co., Col.App., 510 P.2d 1376.
The issues of liability and damages being interwoven in this case, the judgment is reversed and the cause remanded for a new trial on all issues. See Bassett v. O'Dell, 30 Colo.App. 215, 491 P. 2d 604, affirmed, Colo., 498 P.2d 1134.
SILVERSTEIN, C. J., and COYTE, J., concur.
NOTES
[1] Examples of circumstances held sufficient to justify a second examination are: (a) Separate injuries calling for analysis from distinct medical specialties such "whip-lash sprain" and "aggravation of preexisting heart condition", see Marshall v. Peters, D.C., 31 F.R.D. 238; (b) where the examining physician requires the assistance of other consultants before he can make a diagnosis, see Little v. Howey, D.C., 32 F.R.D. 322; or (c) where a substantial time lag occurs between the initial examination and trial, see Vopelak v. Williams, D.C., 42 F.R.D. 387.