LAWRENCE FRIEDLAND, Plaintiff-Appellee, v. ALLIS CHALMERS COMPANY OF CANADA *et al.*, Defendants-Appellants.

First District (5th Division)   No. 85—2457

Opinion filed May 29, 1987.—Rehearing denied August 28, 1987.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Sara E. Cook, of counsel), for appellants.

Rosin, Rosin & Associates, Ltd., of Chicago (Robert A. Rosin and Joseph A. Rosin, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from a $400,000 judgment entered against them following a jury trial on plaintiff's personal injury complaint arising out of an automobile accident. Plaintiff sued defendant Rowecliffe, the driver of the car which struck him, and Allis Chalmers Company of Canada, Rowecliffe's employer. On appeal defendants contend: (1) plaintiff's counsel's repeated instances of misconduct were highly prejudicial and denied defendants a fair trial; (2) the trial court's refusal to instruct the jury on the plaintiff's failure to mitigate his damages was reversible error; (3) the trial court erred in denying defendants' motion for a new trial on all issues where multiple evidentiary errors denied defendants a fair trial; (4) the trial court erred in denying defendants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial because the jury's verdict was against the manifest weight of the evidence.

We affirm.

At trial the following pertinent testimony was adduced. Plaintiff testified that on April 5, 1981, he was driving on the Dan Ryan Expressway northbound to the Kennedy Expressway. He had travelled in the left lane approximately a mile to a mile and a half. Through no fault of plaintiff, defendant Rowecliffe collided with the rear of plaintiff's car. At the time of the collision, plaintiff had slowed down almost to a stop due to traffic conditions. He further testified that Rowecliffe was travelling at approximately 45 miles per hour at the time of impact.

Rowecliffe's testimony presented a contradictory version of the events leading up to the accident. Approximately one mile before that accident, he was travelling 55 miles per hour in the extreme left lane. As he proceeded north, he noticed plaintiff's car "straddling the line" directly 1½ car lengths in front of him. Plaintiff was partially in the extreme left lane and partially in the inside center lane. Plaintiff continued to move to the extreme left lane and Rowecliffe took his foot off the accelerator. He saw plaintiff "slam" on his brakes and he put on his own brakes. At that time, the impact occurred. Additionally, Rowecliffe testified that he was unfamiliar with the expressway. Further, he was lost and knowingly travelling in the wrong direction with the intention of turning around where the traffic was less congested.

David Watson was a passenger in Rowecliffe's car. Watson testified that Rowecliffe was indeed lost and knowingly travelled in the wrong direction. As Rowecliffe was proceeding in the left lane, Watson noticed plaintiff's car partially in their lane. Just prior to the collision, he felt the car decelerate and he saw defendant apply his brakes.

The Chicago police arrived at the scene. Both plaintiff and Rowe-cliffe entered the squad car. Rowecliffe testified that neither he nor plaintiff was asked his version of how the accident happened. Rowe-cliffe did not hear plaintiff relate his version to the officers of what happened. However, after Rowecliffe left the squad car, plaintiff remained in the car with the officers. Plaintiff testified that Rowecliffe was present in the squad car while he related his version of the accident and Rowecliffe remained silent.

OPINION

Defendants contend that numerous remarks made by plaintiff's counsel during trial prejudiced defendants' right to a fair trial. The comments at issue include: (1) suggestions that defendant suborned perjury; (2) portrayal of defense counsel as shrewd and calculating; (3) gratuitous criticism of defense counsel's trial skills; (4) improper references to insurance during *voir dire*; (5) improper references to defense counsel as being part of a large law firm; (6) closing arguments which were replete with facts not in evidence; and (7) misstatements of law during closing arguments.

Plaintiff's counsel did attempt to cast doubt upon defendants' case in chief; however, to suggest that plaintiff's counsel alluded to defendants suborning perjury is a strained reading of the record. Furthermore, at the time the remarks were made, defense counsel raised no objection. As a consequence, any error arising from the remark was waived. (*Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.) The same is true with regard to plaintiff's counsel's characterization of defense counsel's trial skills.

■ Similarly, plaintiff's counsel's remarks during *voir dire*, concerning the size of defense counsel's law firm and in reference to an insurance company, do not constitute reversible error. Immediately after the remarks were made, defendants' counsel objected and the trial court, on its own initiative, asked for a sidebar. Directing his comments to plaintiff's counsel, the judge stated:

"I want to warn you right now, I don't want any further references or comments to [defense counsel's] law firm and/or State Farm Insurance or any other insurance company. No further reference. Do you understand? Thank you."

Although plaintiff's counsel's remarks were improper, the court took proper measures to guard against any prejudicial effect on the jury. Under these circumstances, we find no reversible error. *Taylor v. Carborundum Co.* (1969), 107 Ill. App. 2d 12, 246 N.E.2d 898.

Next, defendants assert that plaintiff's counsel's closing argu-

ments were replete with facts not in evidence. Yet, no such objection was made by defendants' counsel during closing arguments. As a consequence, any error arising from the remarks was waived. (*Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.) Furthermore, a reading of the entire record demonstrates that defendants' contentions are without support.

For example, defendants contend that plaintiff's counsel's reference to the configuration of lanes of the Kennedy Expressway was unsupported by the evidence. However, a virtually identical reference was elicited from plaintiff in direct examination.

■ Additionally, a reference to an overhead sign is purportedly not supported by the evidence. Although the location of any such sign was never introduced into evidence, plaintiff's counsel merely suggested that Rowecliffe may have been distracted. The following question was posed to the jury:

"Why didn't [Rowecliffe] notice [Plaintiff] *** was it distraction from the CTA Rapid Transit Stop? Was it reading the overhead sign?"

In arguing a case to the jury, counsel is allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. (*Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34.) The scope of permissible argument is within the sound discretion of the trial court. (*Jackson v. Whittinghill* (1963), 39 Ill. App. 2d 315, 188 N.E.2d 337.) The question as phrased by counsel is a reasonable inference drawn from plaintiff's testimony.

■ Defendants' objection to plaintiff's counsel's reference to plaintiff's fear of future operations is without merit. Several times, under direct and cross-examination, plaintiff had testified that he was afraid to undergo any further surgery. Plaintiff further testified that he was advised of the risks of surgery and had to sign a consent form. Dr. D'Angelo explained on direct examination that he was familiar with laminectomy procedures generally in this vicinity and that there was a standard type of risk disclosure that the patient was advised of prior to surgery which included failure to relieve the individual's back pain, possibility of paralysis, heart attack and pulmonary problems such as pulmonary embolism or reactions to anesthesia. Plaintiff's counsel's remarks were reasonable inferences from the testimony. Defendants contend that plaintiff's counsel's final-argument references to this testimony were made only to "invoke the sympathy of the jury" and therefore were impermissible. Yet, the scope of permissible argument is within the sound discretion of the trial court. (*Jackson v. Whittinghill* (1963), 39 Ill. App. 2d 315, 188 N.E.2d 337.)

6

Additionally, the court clearly instructed the jury to disregard any invocation of sympathy. Under these circumstances, we find no reversible error. *Taylor v. Carborundum Co.* (1969), 107 Ill. App. 2d 12, 246 N.E.2d 898.

Defendants' assertion that plaintiff's counsel told the jury how the jury instructions were prepared is similarly unsupported. Counsel merely stated that both attorneys submitted proposed questions to the jury. We find nothing improper in that statement.

■ Defendants' final contention with regard to plaintiff's counsel's references to facts not contained in the record concerns the statement that plaintiff spent 30 days in traction for this injury. No such evidence was presented. Yet, defense counsel failed to object. As a consequence, any error arising from the remark was waived. (*Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 44 N.E.2d 847.) Furthermore, a reading of the entire closing argument demonstrates that plaintiff's counsel was actually referring to the total days of treatment, a period which trial testimony established was approximately 30 days. This is not plain error justifying reversal.

Defendants further contend that plaintiff's counsel misstated the law by asking the jury for damages for future medical expenses. A clear reading of the entire closing argument reveals that plaintiff's counsel made no such request. The scant references to plaintiff's "future" cannot be construed as a request for future medical expenses.

Defendants' next contention is that the trial court's refusal to instruct the jury on the plaintiff's failure to mitigate his damages was reversible error and merits a new trial. Defendants' theory was that plaintiff's overweight condition, at the time of the accident, should have reduced his recoverable damages. In effect, they are arguing that plaintiff failed to mitigate his damages by failing to keep slender. This is obviously not the sort of mitigation of damages contemplated by the drafters of the pertinent Illinois Pattern Jury Instruction. See generally, Illinois Pattern Jury Instructions, Civil, No. 33.01, Notes on use (2d ed. 1971).

We next consider defendants' contention that multiple evidentiary errors denied them a fair trial. These include: (1) allowing plaintiff's counsel to propose a hypothetical question to the treating physician which included facts which were never introduced into evidence; (2) multiple errors made on motions *in limine*; (3) rulings on objections interposed during the evidence deposition of David Watson; (4) allowing, over objection, improper evidence regarding costs of travel for the plaintiff and his family to receive treatment; (5) allowing multiple hearsay statements which were highly prejudicial and denied the

defendants an opportunity to cross-examine.

The hypothetical question to which defendants objected included the fact that the plaintiff, prior to this injury, "had been doing some heavy work which required prolonged lifting, standing, walking, bending, reaching, and that he had been doing that on or off in a different capacity from one employer to another for a period of four or five years." Plaintiff testified that since age 12 he has worked at three grocery stores. Plaintiff has worked as a stock boy, helped to unload trucks, mopped floors, worked the cash register and various odd jobs. This work history includes the necessary facts for the hypothetical that plaintiff has been performing some heavy work which required prolonged lifting, standing, walking, bending and reaching for a period of four to five years.

■ Immediately after the accident, a police squad car arrived at the scene. Both plaintiff and Rowecliffe sat in the squad car. Plaintiff testified that while he gave his version of the accident Rowecliffe made no comment. However, Rowecliffe testified that he did not hear plaintiff make a statement to the police officer. Defendants now contend that the trial court erred in denying the motion *in limine* to preclude all evidence regarding the silence of Rowecliffe when plaintiff told the police officer how the accident had occurred. However, plaintiff's testimony as to the silence was admissible as evidence of an admission by Rowecliffe of the truth of what plaintiff said. (*Hatcher v. Quincy Horse Ry. & Carrying Co.* (1913), 181 Ill. App. 30; *Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765.) Consequently, the trial court did not err in denying the motion.

■ Defendants next contend the trial court improperly granted the plaintiff's motion to preclude Dr. Charles D'Angelo from testifying that he had viewed the actual X ray and myelogram films of the plaintiff. Prior to the commencement of Dr. D'Angelo's testimony, plaintiff requested an order barring Dr. D'Angelo from testifying to matters available to him at the time of his deposition which he denied having reviewed. The trial court conducted *voir dire* examination of Dr. D'Angelo, at which time the doctor stated that he had reviewed but not mentioned the X ray or myelogram films. The court then indicated that Dr. D'Angelo would be barred from testifying about his observations derived from the examination of the X ray and myelogram files. In light of Dr. D'Angelo's specific statement in his deposition that he had not reviewed those films, the court's ruling was appropriate.

■ The trial court denied defendants' motion *in limine* to preclude testimony about the number of miles Rowecliffe had driven on

the day of the accident. Defendants contend this denial was reversible error. By analogy, defendants state that mere evidence of drinking prior to an accident in and of itself is insufficient to establish that the drinking has been a contributing cause to the accident. Defendants' analogy is misplaced. There is no similar restriction precluding an attorney from presenting to the jury that a driver has been on the road for 10 hours.

Defendants next contend the trial court erred in deleting from Mr. David Watson's evidence deposition the term "cutting us off," which he used to describe plaintiff's lane change. However, defendants' contention is without support as the Watson deposition appropriately communicates what the witness intended, that being that plaintiff's car suddenly merged into Rowecliffe's lane.

Plaintiff was also allowed to testify about the amount of his airfare to Canada for non-FDA approved treatment which could not be obtained in the United States. Defendants now contend that such testimony was improperly allowed, but they did not object at trial. As a consequence, any error arising from the testimony was waived. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.

In closing argument, plaintiff's attorneys stated:

"I propose to the jury of $7,500 per year for the rest of his life, to cover not just the better times he is able to exist [*sic*] with a lesser amount of pain today, but to cover for the future as well as when the pain for the degenerative process will be there *** at 48.7 years times $7,500 that figure equals $365,250 ***."

Defendants contend that such argument constitutes prejudicial and reversible error, citing *Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206. *Caley* held that a *per diem* argument to the jury is improper.

Even if we accept *arguendo* that these remarks constituted a *per diem* argument, we do not believe that they were so prejudicial as to require a new trial. The courts of this State have been reluctant to extend *Caley* beyond the precise facts presented therein and have ruled that such remarks, while improper, do not necessarily require overturning of the jury's verdict. *Watson v. City of Chicago* (1984), 124 Ill. App. 3d 348, 464 N.E.2d 1100.

Here, the argument in question was but a small portion of the total argument, and counsel placed no undue emphasis thereon. The argument did not approach the comprehensiveness of the argument in *Caley*; counsel did not assert that this was the only correct approach for computing damages. Rather, this passage, and indeed the entire tenor of his argument, was that the figures presented for the jury's

consideration reflected his view of what would be fair and reasonable compensation for plaintiff's injuries. Under these circumstances, we believe that the instant case falls directly within the exception to *Caley* established by *Watson v. City of Chicago* (1984), 124 Ill. App. 3d 348, 464 N.E.2d 1100. In addition, defense counsel raised no objection at the time of trial. As this court has repeatedly noted, the rule generally adopted is that such assignments of error based on alleged prejudicial conduct of opposing counsel will not be considered on appeal unless objection to the alleged prejudicial argument has been made in the trial court, a ruling of the court obtained and the ruling preserved. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.

■ Defendants' final contention is that the jury award is outrageous and excessive, evidencing jury confusion in deciding this case, and the finding of negligence is against the manifest weight of the evidence. However, a jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 461 N.E.2d 551.) Only if the verdict was palpably erroneous and wholly unwarranted, was clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based upon the evidence will it be overturned. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 504 N.E.2d 772.) Plaintiff's testimony indicates that while plaintiff was exercising due caution, Rowecliffe collided into the rear of his car at a high rate of speed. Further, plaintiff underwent surgery and repeated medical procedures during a prolonged hospital stay in an attempt to alleviate his back pain. His medical expenses were in excess of $35,000. Viewing the evidence in light most favorable to plaintiff, it cannot be said that the jury verdict is against the manifest weight of the evidence. Given those facts and these findings, we find no basis for disturbing the jury's verdict.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.