JOY DEE WOODARD, Indiv. and as Ex'r of the Estate of Samuel Dallas Woodard, Jr., *et al.*, Plaintiffs-Appellees, v. EVERETT L. MAINER, d/b/a The Bear's Hideout, *et al.*, Defendants-Appellants.

Fifth District   No. 5—87—0289

Opinion filed March 31, 1988.

Randall Abbott, of Law Offices of Torricelli & Abbott, of Springfield, and Dale E. Gerecke, of Finch, Bradshaw, Strom & Steele, of Cape Girardeau, Missouri, for appellants.

R. Courtney Hughes, of John Paul Womick & Associates, Chartered, of Carbondale, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Joy Dee Woodard, brought an action in the circuit court

of Union County to recover damages under the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, par. 135) for injuries sustained when an automobile driven by John Corbett collided with an automobile driven by her husband, Samuel D. Woodard, Jr. Both drivers were killed. Plaintiff, who sought recovery individually, as executor of her husband's estate, and on behalf of her three minor children, alleged that at the time of the collision, John Corbett was intoxicated and that his intoxication was caused by defendants, Everett Mainer, d/b/a the Bear's Hideout, and Mary Randolph, d/b/a the Revlon Tavern.

Following a jury trial, a verdict of $212,700 was returned in favor of plaintiff. Pursuant to the limits set by the Dramshop Act, the circuit court reduced plaintiff's recovery to $32,700 and entered judgment for her in that amount. Defendants' post-trial motion was denied, and they now appeal. Two questions are presented for our review: (1) whether the evidence was sufficient to establish that it was defendants who caused John Corbett's intoxication; and (2) whether the circuit court erred in submitting plaintiff's instruction No. 15 to the jury. For the reasons which follow, we affirm.

The collision which gave rise to this litigation took place late on the evening of Sunday, July 28, 1985. Samuel D. Woodard, Jr., was driving north on Illinois Route 3 in Union County when a southbound automobile driven by John William Corbett crossed the center line of the highway and crashed into Woodard's car. Corbett was killed instantly. Woodard lingered for approximately 15 minutes, then he, too, died. A postmortem examination revealed that at the time of the collision, Corbett's blood-alcohol content was .245.

In their brief on appeal, defendants seemed to argue that plaintiff had failed to prove that Corbett was, in fact, intoxicated when he crashed into Woodard's automobile. At oral argument, however, defendants' counsel clarified that Corbett's intoxication is not at issue. Rather, the gravamen of defendants' claim before this court is simply that plaintiff failed to establish that Corbett's intoxication was caused by their taverns.

The jury's verdict makes clear that it believed otherwise. As has frequently been held, a jury's verdict will not be overturned unless it is palpably erroneous and wholly unwarranted, was clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable and not based upon the evidence. (*Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 9, 511 N.E.2d 1199, 1205.) Such is not the case here.

The evidence showed that Corbett went to the Bear's Hideout twice on the evening of the collision, once at 5:30 or 6 p.m. and again

at 8 p.m. On each occasion he was served beer. In between these visits he went to the Downs Club, a neighboring tavern which is apparently no longer in business.

After his second visit to the Bear's Hideout, Corbett proceeded to the Revlon Tavern, where he was served at least three more beers. Lynn Caveness, who was present at the bar, testified that Corbett approached a woman there and asked her, using profanity, if she wanted to have sexual intercourse with him. According to Caveness, Corbett "just didn't say stuff like that when he was sober." Caveness also testified that, at one point, Corbett appeared to fall asleep at the bar with a bottle of beer in front of him and that he staggered and "fell up against" the door as he left the premises. In the opinion of Mr. Caveness, who had known Corbett for several years, Corbett was drunk.

Approximately 30 minutes after leaving the Revlon Tavern, Corbett was involved in the fatal collision with Samuel Woodard. A forensic scientist for the Illinois Department of State Police testified that an analysis of Corbett's blood subsequently revealed his blood-alcohol content to be .245. According to Charles Morris, field supervisor and accident reconstruction officer for the Illinois Department of State Police, this blood-alcohol content level, together with Corbett's weight and reported lack of food intake on the evening of the accident, would have placed Corbett "in the extreme upper levels of intoxication."

█ In an attempt to rebut the claim that they were the cause of Corbett's intoxication, defendants called various witnesses who had seen Corbett on the night in question. These witnesses indicated that Corbett had not been drinking to excess at defendants' establishments and did not appear to be intoxicated when he was there. These witnesses, however, were limited to defendants and friends and relatives of defendants, none of whom can be said to be disinterested. Viewing the record as a whole, we think it apparent that the jury found that the evidence presented by plaintiff was more persuasive and that the testimony offered by her witnesses was more credible. Where, as here, there are controverted questions of fact, the jury alone must determine the weight of the evidence and the credibility of the witnesses. (See *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 466, 508 N.E.2d 426, 431.) There is no reason why, as a matter of law, the jury could not have found that both defendants "caused" Corbett's intoxication, and given the direct and circumstantial evidence before us, we can find no basis for disturbing its verdict.

▉ Defendants next argue that the circuit court erred in submitting to the jury plaintiff's instruction No. 15. That instruction defined what is meant by "causing" intoxication within the meaning of the Dramshop Act and was identical to an instruction approved by this court in *Kingston v. Turner* (1985), 133 Ill. App. 3d 677, 479 N.E.2d 410. Unknown to the parties or the circuit court, however, our decision in that case was reversed by the supreme court several weeks before this case was submitted to the jury. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 505 N.E.2d 320.) Given the supreme court's decision, there can be no dispute that plaintiff's instruction No. 15 should not, in fact, have been given. Nevertheless, the record shows that defendants' counsel failed to object to the instruction at the instruction conference. It is axiomatic that a reviewing court will not consider alleged error in the giving of instructions unless specific objections to those instructions have been made in the trial court. (*National Boulevard Bank v. Georgetown Life Insurance Co.* (1984), 129 Ill. App. 3d 73, 82, 472 N.E.2d 80, 86.) The issue is waived.

For the foregoing reasons, the judgment of the circuit court of Union County is affirmed.

Affirmed.

CALVO and LEWIS, JJ., concur.