AMANIE FAKHOURY, a Minor, by Ibrahim Fakhoury, her Father and Next Friend, Plaintiff-Appellant, v. VAPOR CORPORATION, Defendant-Appellee.

First District (2nd Division)    No. 1—88—2135

Opinion filed July 23, 1991.

Ronald S. Fishman, of Fishman & Fishman, Ltd., of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Dan L. Boho, Stephen R. Swofford, and David R. Creagh, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Ibrahim Fakhoury filed suit on behalf of his minor daughter, Amanie Fakhoury (Amanie), against defendant Vapor Corporation (Vapor) and its employee James Guyon (Guyon) to recover damages for personal injuries Amanie sustained when she was struck by an automobile driven by Guyon. Prior to an earlier trial, Guyon had been dismissed as a defendant. That earlier trial resulted in a $2 million verdict for plaintiff, after the grant of a directed verdict for plaintiff on the issue of *respondeat superior*. Because of the circuit court's er-

ror in directing a verdict reflecting agency, this court reversed that judgment and the cause was remanded for a new trial. (*Fakhoury v. Vapor Corp.* (1987), 154 Ill. App. 3d 531, 507 N.E.2d 50.) In the trial which is the subject of this appeal, the jury returned a verdict for Vapor.

In this appeal, plaintiff contends that the trial court committed reversible error (1) in denying plaintiff's motion *in limine*; (2) in allowing Guyon to testify contrary to what plaintiff terms a "binding judicial admission"; (3) in allowing defense counsel to state in his opening statement and closing argument that Guyon was on a personal trip; (4) in refusing to instruct the jury on the definition of a traveling employee; (5) in giving an allegedly misleading special interrogatory; and (6) in entering judgment on the jury's verdict, which plaintiff contends was against the manifest weight of the evidence.

The evidence adduced at trial established the following. On October 12, 1977, at approximately 4 p.m., Amanie, who was five years old, left home with her five brothers and sisters to go to Neisner's drugstore, which was located on the southwest corner of Berwyn and Clark Streets in Chicago. Between Paulina Street and Ashland Avenue, however, Amanie became angry with one of her siblings and went home. The other children proceeded on to Neisner's.

When Amanie returned home two to five minutes later, she was crying. Her mother gave her money to buy candy and Amanie again left home. When the other children returned home later, they were unaware of Amanie's whereabouts, since they had last seen her when she had left them to return home.

Guyon testified that he was driving southbound on Ashland Avenue at a speed of 25 miles per hour. When he was 30 or 40 feet south of the crosswalk at Berwyn, he heard a slight thud to his right. He did not know whether he had hit anything. When he looked in his rearview mirror and saw a child, later determined to be Amanie, lying in the street, he stopped. Amanie was lying in Guyon's lane of traffic near the median, about 30 to 40 feet behind Guyon's car and 40 to 50 feet from the intersection. A passing ambulance immediately stopped and medical aid was rendered to Amanie.

Sister Marlene Geimer, who witnessed the aftermath of the incident, testified that, as she approached Berwyn, she saw an ambulance in the middle of the street. She slowed down and observed a child lying in the center of the street on the painted yellow line, 40 to 50 feet south of Berwyn. She also noticed a small shoe in the northbound left turn lane, approximately 10 feet south of the south crosswalk of Berwyn.

There were no eyewitnesses to the occurrence. Amanie sustained brain damage, hemiparesis, and other related injuries.

# I

Plaintiff initially contends that the trial court erred in denying his motion *in limine*.

At trial, Guyon testified that, at the time of the collision, he had finished work at the Vapor plant and was en route home, but that he was first going to a store to purchase a carpenter's square which he thought he might use on a jobsite in connection with his employment for Vapor the following day. Guyon further testified that he also wanted the square to repair his porch at home. He did not purchase the square on October 12, 1977, and the next day at the jobsite, he used the customer's square. Plaintiff sued Vapor on a *respondeat superior* theory, arguing that Guyon was in the course of his employment at the time of the incident since, during his employment, he drove his car to and from jobsites and, at the time of the accident, he was driving to a store to purchase a tool to use in his employment. Vapor denied responsibility on the theory that Guyon was on a personal trip at the time of the occurrence.

■ The motion *in limine*, as presented, sought to bar introduction of evidence that, subsequent to the occurrence, Guyon purchased a carpenter's square for his own personal use. Plaintiff now suggests that the purpose of the motion was to prohibit *any* evidence of personal use, especially Guyon's intent to buy the square for personal use. Plaintiff additionally argues that, when the court considered the motion, plaintiff advanced this interpretation of the motion, and that this broader scope should have been incorporated into the meaning of the motion.

Though the trial court initially denied the motion *in limine*, it altered its ruling and granted plaintiff the specific relief he sought. As a result, no testimony regarding Guyon's subsequent purchase of a square was ever elicited during the trial.

A motion *in limine* must be sufficiently clear so that all parties understand its limitations and know what testimony is prohibited. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) The motion in the instant case was clear and specific in scope: it sought to prohibit evidence that, subsequent to the occurrence, James Guyon purchased a square for his own personal use. Indeed, the jury never heard any evidence of this nature.

If plaintiff wanted the motion *in limine* to be broader in scope, as he now contends, he could have fashioned it accordingly. His attempt

to now bootstrap the filed motion into a prohibition against all evidence of personal use defies the clarity standard required by *Reidelberger*. Since plaintiff obtained the relief he sought, he cannot now complain that he wanted more.

Notwithstanding our conclusion that the trial court properly limited its ruling to the specific motion presented by plaintiff, we have considered the broader question posed by plaintiff and conclude that the evidence which plaintiff now argues should have been prohibited was relevant and was properly admitted.

## II

■ Plaintiff next contends that the trial court erred in allowing Guyon to alter his deposition testimony that he intended to use the square in connection with his work for Vapor, by introducing evidence concerning his intended personal use of the carpenter's square. Plaintiff characterizes Guyon's deposition testimony as a "binding judicial admission" which should have precluded any contrary evidence of personal use at trial.

Plaintiff's argument rests on a faulty premise. Guyon is not a party to this case. As stated in *Beccue v. Rockford Park District* (1968), 94 Ill. App. 2d 179, 194, 236 N.E.2d 105, a statement by an agent after an event has passed does not bind the principal and cannot be proved as an admission. Thus, what Guyon said in his deposition was not binding on Vapor, and Guyon was free to testify regarding his intended personal use of the square at trial.

Moreover, Guyon's trial testimony concerning an intended personal use, in addition to a business use, does not necessarily contradict his deposition testimony. Guyon's testimony, at trial, that he also intended to use the square personally was reconcilable with his deposition testimony that he intended to use the square for business the following day.

## III

■ Plaintiff next contends that the trial court erred in allowing Vapor's counsel to state, in his opening statement and closing argument, that Guyon was on a personal trip and that he needed the carpenter's square for his own personal use. Plaintiff specifically complains of counsel's comments that Guyon was going to use the square on his own back porch and that he did not seek reimbursement for the tool. Plaintiff argues that these comments were made in an attempt to divert the jury's attention away from the fact that Guyon intended to use the tool during his next day's work.

The record reflects that plaintiff did not object to any of these comments during trial. The first time plaintiff alleged error was in his post-trial motion. Consequently, plaintiff has not properly preserved this issue for appeal. *Delany v. Badame* (1971), 49 Ill. 2d 168, 178, 274 N.E.2d 353.

Nevertheless, apart from plaintiff's failure to object to the comments about which he now complains, Vapor's counsel's comments were neither improper nor prejudicial. Counsel had the right to comment on the evidence and draw reasonable inferences therefrom. Accordingly, the record supports the trial court's denial of plaintiff's post-trial motion concerning these alleged improprieties.

## IV

Plaintiff's next contention is that the trial court erred in refusing to instruct the jury on the definition of a traveling employee. Vapor argues that plaintiff failed to tender the instruction at the conference on instructions so that it could be ruled upon, and thus may not urge error because the instruction was not given. Even if the instruction was properly tendered, Vapor argues, it was properly refused because it was an incorrect statement of the law and was not supported by the evidence.

The proposed instruction, which was not an Illinois Pattern Jury Instruction, was as follows:

"Employees whose duties require them to travel away from their employment premises differ from other employees and are considered to be in the course of their employment when they are traveling from their residence to work and when they are traveling from work to their residence."

The instruction, which plaintiff attached to his post-trial motion, is not numbered. Nor is it included among the instructions ruled upon by the trial court. Unlike the other instructions contained in the record, it contains no markings indicating that it had been ruled upon at the instructions conference.

Vapor maintains that plaintiff never tendered the instruction during the conference; based upon what has been pointed out above, that contention appears to have validity. Furthermore, though the initial conference on instructions was not transcribed, a later conference was transcribed by a court reporter and reflected all of the instructions given, refused, and withdrawn, along with the parties' objections. This allegedly proposed instruction was not referred to during the recorded conference.

The record does reflect that, prior to trial, plaintiff expressed a desire to have the jury instructed as to the definition of a traveling employee. The court responded that if it were to give the instruction, it would be tantamount to directing a verdict on the scope of employment issue. Though the court reserved ruling on the instruction at that time, on the following day, the court ruled that "traveling employee" was a concept with no real meaning outside of worker's compensation cases and that the Illinois Pattern Jury Instructions on agency accurately reflected the law and would give the jury all of the guidance it needed.

■ The Code of Civil Procedure requires that all instructions be tendered at the conference on jury instructions and that they be marked as either "given" or "refused." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1107.) Furthermore, no party may raise on appeal the failure to give an instruction unless he shall have tendered it. (107 Ill. 2d R. 366(b)(2)(i).) Based on the record before us, it appears that plaintiff did not properly tender the instruction. Nonetheless, we are satisfied that the instructions given to the jury adequately conveyed plaintiff's theory and properly instructed the jury as to the applicable law.

V

Plaintiff's next contention is that the court erred in giving the following special interrogatory:

"Do you find from the evidence that James Guyon was acting as the agent of Vapor Corporation and was acting within the scope of his authority as the agent of Vapor Corporation at the time and place of the occurrence?"

The interrogatory, which was answered in the negative by the jury, was given immediately following Vapor's instruction number 19 (Illinois Pattern Jury Instructions, Civil, No. 50.04 (2d ed. 1988)), which stated as follows:

"The defendant, Vapor Corporation, is sued as the principal and the plaintiff claims that James Guyon was acting as its agent at the time of the occurrence. The defendant, Vapor Corporation, denies that James Guyon was acting as its agent and was acting within the scope of his authority as an agent of the defendant at the time of the occurrence.

If you find that James Guyon was the agent of the defendant, Vapor Corporation, and was acting within the scope of his authority as the agent of the defendant, at the time of the occurrence, then any act or omission of James Guyon at that time was in law the act or omission of the defendant.

If you find that James Guyon was not acting as the agent of the defendant or was not acting within the scope of his authority as an agent of the defendant at the time of the occurrence, then the defendant is not liable."

Plaintiff did not object to this instruction. Plaintiff now contends, however, that the special interrogatory was misleading and required proof of two distinct items, when only one was at issue. Specifically, plaintiff contends that since there was no dispute that Guyon was Vapor's employee, the only issue was whether he was acting within the scope of his employment at the time of the occurrence. Vapor responds that because the special interrogatory followed the aforementioned instruction, to which plaintiff agreed, plaintiff cannot now claim error in the giving of the interrogatory.

■■ The purpose of a special interrogatory is not to instruct the jury, but to act as a check on its verdict. It is used to test the general verdict against the jury's conclusions as to the ultimate controlling facts. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542.) Plaintiff is correct in his assertions that a special interrogatory should be single and direct (*Dovin v. Winfield Township* (1987), 164 Ill. App. 3d 326, 517 N.E.2d 1119), and that it should not confuse or mislead or prejudice a party. (*Shaheed*, 137 Ill. App. 3d at 362.) In applying these principles, however, it cannot be said that the special interrogatory given in this case was improper.

There is no error in giving a special interrogatory which is consistent with the instructions which were properly given and which places no greater burden on plaintiff than the instructions. (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 254 N.E.2d 515.) The special interrogatory should use the same language or terms as the instruction. (*Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131.) An interrogatory which mirrors the Illinois Pattern Jury Instructions is properly given. *Beeding v. Olin Chemical Corp.* (1983), 113 Ill. App. 3d 125, 446 N.E.2d 873.

■■ The special interrogatory in the instant case created no additional burden for plaintiff, as it simply restated the jury instruction which preceded it. Furthermore, it was couched in the same language as that instruction. Thus, the court did not err in giving the special interrogatory.

## VI

Plaintiff's final contention is that the verdict was against the manifest weight of the evidence.

■ It is the function of the jury to resolve controverted issues of fact. A jury's verdict must be affirmed unless it is contrary to the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the jury's verdict is palpably erroneous. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 83, 392 N.E.2d 628.

Here, the jury heard all of the evidence and returned a verdict for Vapor. A review of the record does not lead to the conclusion that the verdict is palpably erroneous or that an opposite conclusion is clearly evident. The verdict was therefore not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.