CARLOS ESCOBAR *et al.*, Plaintiffs-Appellants, v. MADSEN CONSTRUCTION COMPANY, Defendant-Appellee (Xavier Watkins *et al.*, Defendants).

First District (2nd Division)   No. 1—90—2599

Opinion filed February 11, 1992.—Rehearing denied April 8, 1992.

Thomas P. Cernek & Associates, of Chicago, for appellants.

Hinshaw & Culbertson, of Chicago (Nancy G. Lischer and Steven C. Wolf, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Carlos and Lorena Escobar sued Xavier Watkins for shooting Carlos Escobar, and they sued Watkins' employer, Madsen Construction Company (Madsen), for negligently hiring and supervising Watkins. Madsen moved for summary judgment on all counts directed against it. The trial court granted the motion, finding that the Escobars failed to present evidence which could show that Madsen proximately caused their injuries, and the Escobars appeal.

In 1989, Carlos Escobar, Xavier Watkins and John Jackson were employed by Madsen for the construction of a building in Evanston, Illinois. After work on May 18, 1989, Watkins and Escobar got into a fight in a bar near the jobsite. On the morning of May 19, 1989, when Escobar got out of his car before work, about two blocks from the jobsite, Watkins shot Escobar.

Watkins, a black man, worked as a carpenter foreman on the Evanston construction site. Because his home was far from the jobsite, while he was working in Evanston, he shared a hotel room with the general foreman, Steve Carlson, who is white. One carpenter, a white man who was supervised by Watkins and Carlson, stated in his deposition that Watkins caused the continual racial problems on the job; on numerous occasions he screamed at the workers under him and he easily lost his temper. The carpenter got into an argument with Watkins, and Watkins threatened to get his gun from his car and "take care" of the worker. The worker told the job superintendent about the threat.

Several other carpenters, including Escobar, described Watkins in their affidavits as a mean person who was abusive to everybody. Watkins' crew had to work in a dangerous manner, without safety precautions, because that was how Watkins wanted to do the work, and he yelled at and threatened to fire workers who would not do things his way. The Escobars' witnesses stated that Watkins frequently argued with Carlson. Madsen presented contrary evidence concerning Watkins' character at work.

At the bar on the night prior to the shooting, Watkins pushed Carlson up against a wall, possibly because Carlson had been "bitching" at Watkins at work that day about the money Watkins owed him

for room rent. Escobar stated in his deposition that after Carlson left, he and two other white workmen asked Watkins what happened, and Watkins punched Escobar three or four times. The three men hit Watkins several times and Escobar knocked Watkins down.

Carlson knew Watkins occasionally used cocaine. One of the Escobars' witnesses said Watkins appeared to be high on cocaine on the morning of the shooting.

■■ Summary judgment is appropriate if the pleadings and evidentiary materials on file show that the moving party is entitled to judgment as a matter of law. (*Lower v. Lanark Mutual Fire Insurance Co.* (1983), 114 Ill. App. 3d 462, 466, 448 N.E.2d 940, 944.) In a negligence action, if the evidence cannot support a finding that defendant's acts or omissions proximately caused plaintiff's injury, defendant is entitled to judgment. *Salinas v. Werton* (1987), 161 Ill. App. 3d 510, 515, 515 N.E.2d 142, 144.

"A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. [Citation.] If the negligence charged does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury. [Citation.] The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361, 493 N.E.2d 372, 373.

The Escobars seek to hold Madsen liable on theories of negligent hiring and supervision. They admit that Watkins was not acting in the course of his employment when he shot Escobar, so the shooting itself cannot be considered Madsen's act under the doctrine of *respondeat superior.* Watkins' act is, thus, the act of a third party and an intervening cause of the Escobars' harm. In order to resist the motion for summary judgment, the Escobars needed to present evidence from which the trier of fact could conclude that the negligent hiring and supervision provided more than a condition which made the injury possible; the shooting must have been the result of a natural and continuous sequence of events set in motion by Madsen's negligence. The Escobars' injuries must have been foreseeable to a person of ordinary prudence in Madsen's position, and the negligent hiring and supervision must have been a substantial factor in bringing about the harm.

*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 89, 508 N.E.2d 1201, 1210.

In *Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 502 N.E.2d 454, an off-duty deputy sheriff assaulted the plaintiff, and the plaintiff sought to impose liability on the department because the department should have known of the deputy's psychological instability. The trial court granted summary judgment for the department and the appellate court affirmed, finding no connection between the employment and the assault. Like Watkins, the deputy did not obtain the weapon he used in the assault from his work and he was not at work at the time of the assault. Appellants argue that *Bates* is distinguishable because Watkins first met Escobar at work and pressures at work could have contributed to his violent act, whereas the deputy met his victim only at the time of the attack, not in connection with work, and there was no evidence of departmental pressures contributing to the act. These distinctions show only that the work provided a condition for Watkins' attack, not that the work proximately caused the attack.

■ The Escobars cite several cases which establish that an employer may be liable for negligent hiring and supervision of an employee who intentionally harms someone while acting outside the scope of his employment. However, all of the Escobars' cases fall within the purview of Restatement (Second) of Torts, section 317 (1965), which provides that an employer may be liable for harm caused by an employee acting outside the scope of his employment if the employee is on the employer's premises or using chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee. In *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 387 N.E.2d 1241, the defendant gave its employee a passkey which he used to enter plaintiff's apartment, where he assaulted the plaintiff. In *Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 496 N.E.2d 1086, defendant gave its employee a truck which he used in his assault on the plaintiff. In this case Watkins was not on Madsen's jobsite, not doing Madsen's work, and not using Madsen's gun when he shot Escobar. Evidence of Watkins' orneriness and drug usage, together with a report from one worker that Watkins had threatened to get his gun from his car, did not make the shooting a foreseeable consequence of hiring and supervising Watkins. The alleged negligent hiring and supervising could not have been a substantial factor in bringing about the shooting. The trial court properly concluded that the Escobars had not presented evidence from which a trier of fact could

find that Madsen's alleged negligent hiring and supervision of Watkins proximately caused the Escobars' injuries. Accordingly, we affirm.

Affirmed.

SCARIANO and DiVITO, JJ., concur.