EMMA CARTER, as Adm'r of the Estate of Emma L. Hopkins, Deceased, Plaintiff-Appellee, v. SKOKIE VALLEY DETECTIVE AGENCY, LTD., Defendant-Appellant.

First District (1st Division)    No. 1—91—3732

Opinion filed December 6, 1993.

Lord, Bissell & Brook (Hugh C. Griffin and Sandra K. Macauley, of counsel) and Purcell & Wardrope, Chartered (Paul V. Kaulas, of counsel), both of Chicago, for appellant.

Levin & Perconti, P.C., of Chicago (Steven M. Levin and Joel Ostrow, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, Terry Harris was convicted of the murder, aggravated criminal sexual assault, and aggravated kidnapping of Emma L. Hopkins. (*People v. Harris* (1989), 132 Ill. 2d 366, 547 N.E.2d 1241.) This case involves the civil action for money damages brought by Hopkins' mother, Emma Carter, as administrator of her daughter's estate, against Harris' employer, the Skokie Valley Detective Agency, Ltd. (Skokie Valley). Count I of plaintiff's complaint was a wrongful death claim and count II was a survival claim. Plaintiff alleged that Skokie Valley was negligent in hiring Harris as a security guard and that this negligent hiring was a proximate cause of the kidnap, rape, and murder of her daughter. Skokie Valley moved for a directed verdict at the end of plaintiff's case and then again after the presentation of all the evidence. The trial judge denied both motions. The jury found for plaintiff and against Skokie Valley under count I (wrongful death) in the sum of $40,000 and under count II (survival action) in the sum of $500,000. The trial judge denied Skokie Valley's motions for judgment notwithstanding the verdict (judgment *n.o.v.*) or, in the alternative, a new trial and entered judgment on the jury's verdict. On appeal, Skokie Valley argues: (1) that it was entitled to judgment *n.o.v.* because, as a matter of law, Skokie Valley's alleged negligence was not a proximate cause of plaintiff's decedent's injuries and death; and (2) that the trial judge's inconsistent and prejudicial evidentiary rulings entitled Skokie Valley to a new trial on the issue of liability.

During 1983, Harris worked for the security guard firm of L.J. Stamps. His supervisor was Thomas Davis. Davis stated that Harris resigned in September 1983, because he had found a better paying job. At the end of 1983, the L.J. Stamps agency was taken over by Skokie Valley and, on January 1, 1984, Davis officially began working for Skokie Valley. On October 20, 1984, Harris applied for a job with Skokie Valley. Davis remembered that Harris had left L.J. Stamps the previous year in "good standing" and, therefore, he considered Harris to be essentially a "rehire." Consequently, he neglected to conduct the detailed investigation and background check which would ordinarily be conducted and which was required by the Private Detective, Private Alarm, and Private Security Act of 1983 (Ill. Rev. Stat. 1991, ch. 111, par. 2651 *et seq.* (now 225 ILCS 445/1 (West 1992))). Thus, he never discovered that Harris had been fired by North Central Security, another security guard firm, within the last year or

that he had several misdemeanor convictions and an arrest warrant outstanding.

Apparently, Harris had been arrested on July 11, 1982, on a misdemeanor charge of unlawful use of weapons because he was carrying a gun while off duty. He pled guilty and was sentenced to a year of conditional discharge. On May 6, 1984, he was again arrested for carrying a gun while off duty. He was again convicted of unlawful use of weapons and this time sentenced to 30 days' incarceration and one year's probation. On May 29, 1984, Harris pulled a gun on two police officers who were walking up a flight of stairs in his building in connection with a narcotics investigation of another tenant. The officers wrested the gun from Harris' control and, after being arrested and taken to the station, he was found to be in possession of marijuana. He was subsequently convicted of aggravated assault and possession of marijuana. Finally, on September 8, 1984, defendant again was arrested for carrying a gun while off duty. He never appeared on the scheduled court date and, at the time he was arrested for plaintiff's decedent's murder, an arrest warrant was outstanding.

Davis admitted that, if he had known that Harris had several criminal convictions or was on probation or had a warrant outstanding for his arrest, he never would have hired him. Neil Meccia, Skokie Valley's majority shareholder, also stated that he would never hire any person who had been convicted of aggravated assault or unlawful use of weapons.

In effect, Davis "rehired" Harris "on the spot" and gave him a Skokie Valley Detective Agency I.D. card and a patch to sew on his uniform. Davis told Harris to report for duty the next day at the Amoco station located at Pulaski and Division Streets in Chicago. On October 21, 22, and 23, Harris worked the 2 p.m. to 10 p.m. shift at the Amoco station. The plaintiff's decedent, Emma Hopkins, was employed as a cashier at the Amoco station.

At approximately 1:45 p.m., on October 28, 1984, the date that Harris murdered Emma, Harris arrived at the Amoco station wearing his uniform and carrying his gun. Raphael Davidson, a co-worker of Emma's, stated that Harris told them he was not scheduled to work at the station that day. He testified that Harris explained that he was assigned to work somewhere else and asked Emma to give him a ride if she was going in the same direction. Emma agreed to give him a ride and they left together in her car.

Her body was discovered the next morning at approximately 11 a.m. stuffed under a storage tank at a vegetative oil processing plant located at 1301 East 99th Street in Chicago. Skokie Valley was unable to locate its roster sheets for October 28, 1984, which would

have illustrated where Harris was supposed to be working that day. Davis recalled, however, that Harris had requested that weekend off in order to move. Ultimately, the judge gave the jury the "missing evidence" instruction which allows the finder of fact to construe an absent document against the party who fails to produce it at trial. *Saunders v. Department of Public Aid* (1990), 198 Ill. App. 3d 1076, 1082, 556 N.E.2d 736, 740.

On appeal, Skokie Valley does not contest that it was negligent in hiring Terry Harris as a security guard in view of his convictions for unlawful use of weapons and aggravated assault. Skokie Valley argues, however, that the negligent hiring of Harris was not a proximate cause of plaintiff's decedent's injuries and death as a matter of law. Skokie Valley also contends that, as a matter of public policy, a security guard company's liability should not be extended to the off-duty, off-premises crimes alleged in this case. Plaintiff maintains, on the other hand, that there was ample evidence from which the jury could have reasonably concluded that Skokie Valley proximately caused the plaintiff's decedent's injuries and death. Plaintiff asserts that, if it were not for Skokie Valley's negligence, "this demonstrably unfit person" would not have been in Emma Hopkins' life.

■ It is established in Illinois that a cause of action exists against an employer for negligently hiring someone the employer knew or reasonably should have known was unfit for the job in the sense that the employment would place the employee in a position where his unfitness would create a foreseeable danger to others. (*Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 1030, 502 N.E.2d 454, 458.) In addition, this action for negligent hiring can be successful "even though the employee commits the criminal or intentional act outside the scope of employment." (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 338, 443 N.E.2d 1162, 1166.) However, proximate cause is an essential element of any negligence action and, although an employer may have negligently hired someone who caused harm to another, liability will only attach if the injuries were brought about by reason of the employment of the unfit employee. (*Bates*, 150 Ill. App. 3d at 1031, 502 N.E.2d at 458.) Therefore, "in ascertaining whether there is a causal connection between the employer's negligence and plaintiff's injuries, it is necessary to inquire whether the injury occurred by virtue of the servant's employment" (*i.e.*, "because of the employment"). (*Bates*, 150 Ill. App. 3d at 1031-32, 502 N.E.2d at 459.) In other words, the employment itself must create the situation where the employee's violent propensities harm the third person. *Coath v. Jones* (1980), 277 Pa. Super. 479, 482, 419 A.2d 1249, 1250.

" 'A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. [Citation.] If the negligence charged does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury. [Citation.] The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause.' " (*Escobar v. Madsen Construction Co.* (1992), 226 Ill. App. 3d 92, 94, 589 N.E.2d 638, 639, quoting *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361, 493 N.E.2d 372, 373.)

Generally, the existence of proximate cause is a question of fact for the jury. (*Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 269, 496 N.E.2d 1086, 1089.) If the evidence is insufficient to establish that the employer's negligence proximately caused plaintiff's injuries, however, the employer is entitled to judgment as a matter of law. *Escobar*, 226 Ill. App. 3d at 94, 589 N.E.2d at 639.

In this case, as a matter of law, Skokie Valley's negligence in hiring Harris was not a proximate cause of plaintiff's decedent's injuries and death and Skokie Valley was entitled to judgment *n.o.v.* In *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 923, 387 N.E.2d 1241, 1243, a security guard for the defendant security company who was assigned to the Chicago Beach Tower Apartments used his passkey to enter plaintiff's apartment, where he then assaulted her. The evidence showed that the guard had several prior criminal convictions. The *Easley* court reasoned that these facts could support a claim for willful and wanton hiring because, in connection with his employment as an armed security guard, he was in possession of a passkey to the apartments he was employed to protect.

In *Malorney* (146 Ill. App. 3d at 265, 496 N.E.2d at 1086), the defendant trucking company hired an over-the-road driver without checking whether he had criminal convictions. In fact, the driver had a history of convictions for sex-related crimes and, the previous year, had been arrested for aggravated sodomy of two teenage hitchhikers while he was driving an over-the-road truck for another company. Subsequently, while employed for the defendant company, he picked up the plaintiff and repeatedly raped and sexually assaulted her in the sleeping compartment of the over-the-road truck he was provided by defendant. The *Malorney* court held that these facts were sufficient to submit the case to the jury on the issue of negligent

hiring and entrustment because the employer supplied defendant with the over-the-road truck which he used to facilitate the assault and it was foreseeable that an over-the-road trucker would pick up hitchhikers.

In *Gregor* (111 Ill. App. 3d at 333, 443 N.E.2d at 1162), the defendant held a party at his parents' house and, according to the allegations of the complaint, hired a friend who he knew had a reputation for violence to act as the "bouncer." During the party, the "bouncer" allegedly attacked the plaintiff and caused severe and permanent injuries. The *Gregor* court held that these allegations were sufficient to state a cause of action under both the theory of *respondeat superior* and the theory of negligent hiring.

In *Bates* (150 Ill. App. 3d at 1025, 502 N.E.2d at 454), however, the court held that summary judgment for defendant was proper where an off-duty sheriff's deputy who the department knew or should have known was psychologically unstable raped and assaulted plaintiff. The court held that plaintiff's injuries were not in any way the result of the sheriff's employment where he was not on duty, he was out of uniform and where the plaintiff did not even know he was a sheriff's deputy until he told her after the assault. In *Escobar* (226 Ill. App. 3d at 92, 589 N.E.2d at 638), the court also held that summary judgment for defendant on a claim for negligent hiring and retention was proper where plaintiff was shot by a co-worker before work with his own weapon and two blocks from the jobsite even though defendant knew that the co-worker was dangerous and had threatened the victim previously. The *Escobar* court reasoned that the employment provided a condition for the attack, but was not what proximately caused the attack.

We believe that the existence of proximate cause in the instant case is not as clear as in *Easley, Malorney,* and *Gregor,* and, on the surface, not as absent as in *Escobar* and *Bates.* However, after analyzing the reasoning of the above-cited cases in view of the facts of this case, we believe that, as a matter of law, the fact of Harris' negligent employment was not the cause of plaintiff's decedent's injuries and death. Unlike in *Easley, Malorney*, and *Gregor,* Harris' employment merely furnished a condition which made the rape and murder possible, but it was not the result of " 'a natural and continuous sequence of events' " set in motion by Skokie Valley's negligence and " 'unbroken by any effective intervening cause.' " (*Escobar,* 226 Ill. App. 3d at 94, 589 N.E.2d at 639, quoting *Kemp,* 143 Ill. App. 3d at 361, 493 N.E.2d at 373.) It was not the fact Harris was a security guard that got him into Emma's car and proximately caused her injuries and death; it was the fact that she trusted him

because she knew him from work where he happened to be employed as a security guard. In order to find liability in this case, we would have to reason that if Skokie Valley had not negligently hired Harris he would not have met Emma and she would not have trusted him enough to let him in her car. If we followed such reasoning, then we would have had to find Skokie Valley liable if, after leaving the Amoco station alone, she had seen him on the street out of uniform and offered him a ride or if they ran into each other on a weekend at the supermarket. We do not believe that the concept of proximate cause should be extended this far. As illustrated by *Easley, Malorney,* and *Gregor,* there must be a tangible connection between the employee's violent tendencies, the particular job he is hired to do, and the harm to the plaintiff. No such connection is present here. If we were not to hold as we do, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." (*Bates,* 150 Ill. App. 3d at 1032, 502 N.E.2d at 459.) Such a rule would make any person with a conviction for any violent crime virtually unemployable if the employer knew, or the employment was such that the employer should have known, of the employee's criminal record. No employer would hire such a person for even the most menial of jobs if he would be liable for any criminal or intentional acts that the employee might inflict upon another who happened to have come into contact with him as a result of his employment. Consequently, we must reverse the judgment of the circuit court and remand with instructions to enter a judgment *n.o.v.* for Skokie Valley. In light of our disposition of this issue, we need not address Skokie Valley's second argument that the trial judge's inconsistent and prejudicial evidentiary rulings entitled it to a new trial.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand with instructions to enter an order consistent with this opinion.

Reversed and remanded with instructions.

CAMPBELL and O'CONNOR, JJ., concur.